UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW NETTERVILLE,<br><br>      Plaintiff,<br><br>vs.<br><br>SOUTH DAKOTA STATE PENITARY; DANIEL SULLIVAN, Warden, in his individual and official capacity; TIMOTHY SCHNEIDER, a/k/a Tim, Unit Manager, in his individual and official capacity,<br><br>      Defendants. | 4:22-CV-04149-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

  Plaintiff, Matthew Netterville, an inmate at the South Dakota State Penitentiary[1] at the start of this lawsuit, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Netterville did not move for in forma pauperis status and paid $350 towards his filing fee. This court ordered Netterville to file a motion for leave to proceed in forma pauperis or, in the alternative, pay the remaining $52 administrative fee. Docket 4. Netterville has filed a motion for leave to proceed in forma pauperis and has included a financial affidavit. Docket 5.

---

[1] Netterville names "South Dakota State Penitary" as a defendant in this lawsuit. Docket 1 at 2. This court will refer to the institution as the South Dakota State Penitentiary.

I.     **Motion for Leave to Proceed in Forma Pauperis**

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Netterville is no longer incarcerated and cannot provide a prisoner trust account report. Based on the information in Netterville's financial affidavit, the court grants Netterville leave to proceed in forma pauperis. Netterville has already paid $350, and his filing fee is now paid in full because the $52 administrative fee is not assessed against plaintiffs who are granted leave to proceed in forma pauperis.

## II.     1915A Screening

### A.     Factual Background

The facts alleged in Netterville's complaint are: that South Dakota State Penitentiary officials refused to send out his legal mail. Docket 1 at 3-5, 7. Netterville claims that Unit Manager Timothy Schneider made copies of his mail, which included a complaint making Prison Rape Elimination Act (PREA) allegations against a guard,[2] on September 27, 2022, but did not send out his mail at that time. *See id.* at 4-5. He did not see Schneider again about his mail until October 7, 2022. *Id.* In one portion of his complaint, Netterville writes that "[he] still do[es] [not] know if [the complaint] was even mailed[.]" *Id.* at 4. Elsewhere, he writes that "[he] think[s] letters were mailed out" and that he filed a grievance because his legal mail was withheld for eleven days before being mailed out. *Id.* at 5, 7. Netterville wrote to Dan Sullivan,[3] the South Dakota State Penitentiary Warden at that time, between September 30, 2022, and October 5, 2022,[4] but he never heard back from Sullivan. *See id.* at 4. He wrote

---

[2] Netterville refers to "a complait [sic] paper out of Minehaha [sic] Dristric [sic] Court[.]" Docket 1 at 5. It is unclear whether he sought to file a complaint in state or federal court. *See id.*

[3] Netterville brings claims against Dan Sullivan, the former South Dakota State Penitentiary Warden, in his individual and official capacity. Docket 1 at 2. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." The current South Dakota State Penitentiary Warden is Teresa Bittinger, who is automatically substituted for Sullivan on the official capacity claims. *See* Fed. R. Civ. P. 25(d).

[4] Netterville writes, "Warden sent complaint 9-30-22 – 10-5-22 but never heard back[.]" Docket 1 at 4. It is unclear whether Netterville sent a complaint to Sullivan on each of these dates or whether one complaint was sent between these dates. *See id.*

3

a letter to the South Dakota Secretary of Corrections regarding the situation, but he did not receive a response. *Id.*

Netterville states that he "was in fear every day for [his] [s]afety and [f]reedom[.]" *Id.* at 5. At the time he wrote his complaint, he still feared retaliation and placement in solitary confinement.[5] *See id.* He sues Sullivan and Schneider in their individual capacities and Bittinger and Schneider in their official capacities. *See id.* at 2-3. Netterville seeks $10,000 from each defendant, reimbursement of his filing fees, and "fees for delivery of court papers to defendants." *Id.* at 5.

### B.     Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

---

[5] It is unclear whether Netterville alleges that he feared being retaliated against by being placed in solitary confinement or that he was placed in solitary confinement in retaliation for attempting to file a lawsuit. Docket 1 at 5. He writes, "Im [sic] still in fear of there [sic] retaliation they could do to me locking me up in Solitary Confinement what could happen while taken me there or what might happen while there this fear is every day since [September 27, 2022]." *Id.*

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663-64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553-63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C. Legal Analysis

#### 1. Claims Against the State of South Dakota

Netterville brings claims against the South Dakota State Penitentiary. Docket 1 at 2. The Eleventh Amendment bars suit against a state entity, as

opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota statute, the State Penitentiary is governed by the South Dakota Department of Corrections, which was created by the state legislature. SDCL §§ 24-1-4, 1-15-1.2. The State Penitentiary is an arm of the state of South Dakota and, as such, is not subject to suit under § 1983. Netterville's claims against the South Dakota State Penitentiary are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

  **2.**  **Official Capacity Claims**

Netterville brings claims against Bittinger and Schneider in their official capacities. *See* Docket 1 at 2-3. These defendants are employees of the state of South Dakota. *See id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil

liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Netterville only requests money damages.[6] Docket 1 at 5. The state of South Dakota has not waived its sovereign immunity. Thus, Netterville's claims against Bittinger and Schneider in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3.    Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

---

[6] In the relief section of his complaint, Netterville expresses concern that defendants would retaliate against him, but he does not identify any injunctive relief he seeks to prevent retaliation. *See* Docket 1 at 5. Netterville has been released from custody since filing his complaint. Thus, even if this court construed Netterville's complaint as seeking injunctive relief to prevent retaliation, any injunctive relief sought by Netterville would be moot. *See Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998). To the extent that Netterville brings claims against Bittinger and Schneider in their official capacities for injunctive relief, those claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Netterville's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

### a. Access-to-the-Courts Claim

Netterville claims that he was prevented from sending out legal mail. Docket 1 at 3-5, 7. Construing his complaint liberally, he brings a claim against Sullivan and Schneider in their individual capacities for violating his First Amendment right to access the courts. *See id.*

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Lewis*, 518 U.S. at 353).

Here, Netterville fails to allege facts sufficient to state a First Amendment access to the courts claim. It is unclear from Netterville's complaint whether his legal filing was ever mailed out by State Penitentiary officials. *See* Docket 1 at 3-5, 7. Netterville's statement that State Penitentiary officials withheld legal mail for eleven days before mailing it suggests that his legal filing was mailed after a delay, though he also indicates that he does not know whether the filing

8

was mailed. *See id.* at 4, 7. But even assuming that State Penitentiary officials did not mail his legal filing, Netterville fails to allege an actual injury under *Lewis*. *See id.* at 3-5, 7; 518 U.S. at 349. He does not claim that he was prevented from sending legal filings after October 7, 2022, and he does not claim that he was ultimately prevented from sending his PREA complaint. *See* Docket 1 at 3-5, 7. Thus, Netterville's First Amendment access-to-the-court claim against Sullivan and Schneider in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    **b.**  **Right to Send and Receive Mail Claim**

Netterville claims that State Penitentiary officials did not allow him to send mail. Docket 1 at 3-5, 7. Construing his complaint liberally, Netterville brings a claim against Sullivan and Schneider in their individual capacities for violation of his First Amendment right to send and receive mail. *See id.*

Inmates retain the First Amendment right to "send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Eighth Circuit Court of Appeals has applied *Turner*'s four-factor test to prison regulations regarding mail:

9

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh*, 17 F.3d at 259. This standard applies to both incoming and outgoing mail. *Id.* (citation omitted).

Netterville alleges facts sufficient to state a claim for deprivation of his First Amendment right to send and receive mail. He alleges that he attempted to send mail and was prevented from doing so by Schneider, although it is unclear if Schneider delayed the sending of Netterville's mail or refused to send it entirely. *See* Docket 1 at 3-5, 7. Netterville alleges that he wrote to Sullivan regarding his mail between September 30, 2022, and October 5, 2022, and that Sullivan did not respond. *Id.* at 4. Although he does not allege that Sullivan directly participated in the deprivation of his rights, he alleges that he made Sullivan aware of the deprivation and that Sullivan's failure to supervise Schneider contributed to the deprivation. *See id.* Thus, Netterville's First Amendment right to send and receive mail claim against Sullivan and Schneider in their individual capacities survives § 1915A screening.

### c. Retaliation Claim

Netterville claims that he fears what could be done to him in retaliation while placed in solitary confinement after attempting to file a PREA claim against a guard. *Id.* at 5. Construing his complaint liberally, Netterville brings a First Amendment retaliation claim.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at 876.

Netterville fails to allege facts sufficient to state a First Amendment retaliation claim against Sullivan and Schneider. Construing his complaint liberally, Netterville alleges that he was placed in solitary confinement in retaliation for attempting to access the courts. *See* Docket 1 at 5. But he makes no claims that Sullivan and Schneider played any role in the retaliation. *See id.* Thus, even if his placement in solitary confinement meets the standard for retaliation under *Spencer*, 738 F.3d at 911 (citing *Revels*, 382 F.3d at 876), he fails to allege that Sullivan and Schneider directly participated in the retaliation or caused it to occur through a failure to train and supervise as required by *Parrish*. *See* 594 F.3d at 1001. Netterville's First Amendment retaliation claim against Sullivan and Schneider in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thus, it is ORDERED:

11

1. That Netterville's claims against the South Dakota State Penitentiary are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2. That Netterville's claims against Bittinger and Schneider in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3. That Netterville's First Amendment right to send and receive mail claim against Sullivan and Schneider in their individual capacities survives § 1915A screening.

4. That Netterville's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That the Clerk of Court shall send blank summons forms and Marshal Service Forms (Form USM-285) to Netterville so that he may cause the complaint to be served upon defendants Sullivan and Schneider.

6. That Netterville shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Sullivan and Schneider. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed.

7. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and this order, upon defendants Sullivan and Schneider.

8. Defendants Sullivan and Schneider will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

9. Netterville will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated May 25, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE